# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alfred Wendell Howard Jr.<br>14005 Mapledale Avenue<br>Woodbridge, VA 22193-4406<br><br>and<br><br>Hikiem Sharodd Cain<br>9861 Whiskey Run<br>Laurel, MD 20723-1444<br><br>Plaintiffs,<br><br>vs.<br><br>Federal Express Corp.<br>The Corporation Trust Company<br>(Registered Agent)<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>and<br><br>John O'Reilly, Manager<br>Federal Express Corp.<br>DCAA Station<br>1501 Eckington Place NE<br>Washington DC 20002<br><br>Defendants. | Case No. _____ |

## **COMPLAINT**

Plaintiffs, black African American males, Alfred Wendell Howard Jr. ("Mr. Howard"),

and Hikiem Sherodd Cain, ("Mr. Cain") collectively ("Plaintiffs"), by their undersigned

Counsel make this complaint against their former employer, Federal Express Corporation

("Fed Ex"), as well as their former manager/supervisor John O'Reilly ("Mr. O'Reilly"),

collectively ("Defendants").

## INTRODUCTION

1.      This is a civil action for injuries that Plaintiffs Mr. Howard and Mr. Cain

sustained as a result of Defendants FedEx and Mr. O'Reilly's unlawful termination of

their employment without just cause, in breach of their implied contract/policy with

Plaintiffs.


2.      Plaintiffs assert claims for discrimination in the making and enforcement of their

employment contract pursuant to 42 U.S.C. §1981. Plaintiffs also assert District of

Columbia common law claims of breach of contract, breach of implied good faith

dealing in contract, promissory estoppel, defamation, and Negligence.

## JURISDICTION AND VENUE

3.      This is a civil action arising under the laws of the United States. This Court has

jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1367

(supplemental jurisdiction).


4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events

giving rise to Plaintiffs' claim occurred in the District of Columbia.

**PARTIES**

**Plaintiffs**

5.      Mr. Howard is a Black, African American man, and a resident of Virginia. Mr.

Howard started working for Federal Express on October 27, 1997 as a full-time

Courier, and continued doing so, until he was terminated on December 23, 2015.


6.      Mr. Cain is a Black, African American man, and a resident of Maryland. He

started working for Federal Express on or about November 20, 2008 as a full-time

Courier, and continued doing so until he was terminated on June 24, 2016.


**Defendants**

7.      Federal Express Corporation aka FedEx Express, is an incorporated entity.

Incorporated in the state of Delaware and registered to do business in the District of

Columbia, with an office located at 1501 Eckington Place NE, Washington DC 20002.


8.      Mr. O'Reilly is the Manager of Station Operations of Federal Express

Corporation at the DCAA station, 1501 Eckington Place NE, Washington DC 20002.


**FACTS**

## Facts Common to both Plaintiffs:

9.      Mr. Howard and Mr. Cain (and several other employees), were terminated when

FedEx' knowingly put into service/on the road, trucks with unsecure lock systems,

(especially truck #231728), that made it easy for third parties to break into, and steal

customers' packages, after drivers have locked and left their trucks to deliver packages, without making it obvious, noticeable or apparent that the truck has been compromised.

10.     At the time of the incidents that resulted in Plaintiffs' termination, the master key of the truck involved had been missing for a while, and Defendants and their management knew of the missing master key. The master key overrides the locks on wristband swipe keys trucks and in particular truck #231728, that Defendants assigned to Plaintiffs to use for their delivery on the days the truck was burglarized and packages were missing without Plaintiffs knowing because nothing on the surface was out of place.

11.     Mr. Howard and Mr. Cain, never had custody or control of the missing master key. The custodian of all the keys including but not limited to duplicate keys and master keys at all the relevant times, was Mr. Glen Booker ("Mr. Booker").

12.     As FedEx drivers, Plaintiffs' daily starting work routine was to clock in, go to the "gatekeeper" - person responsible for equipment like scanners and keys etc. Then Plaintiffs will give the gatekeeper the number of their truck, and the gatekeeper will give them their keys. At the end of the day when Plaintiffs have completed work for the day, they go back to the gatekeeper and hand he/she all the equipment, including

their keys. Plaintiffs are not allowed to go home with their keys and never went home with it or any of their work equipment.

13.     During all relevant times, Mr. Booker had control of all FedEx trucks keys in the FedEx depot where Plaintiffs worked.

14.     To the knowledge and belief of Plaintiffs, up-to-the date of their respective terminations, and to-date, the missing master key for truck #231728, has not been found or accounted for, by the Defendants and or the keys custodian Mr. Booker.

15.     To Plaintiffs knowledge, to-date, Mr. Booker, who was responsible for all the keys, including but not limited to the master key that was missing, has not been disciplined or terminated, and he is still the custodian of the keys.

16.     Mr. Booker's responsibilities/duties includes taking inventory. As part of the inventory system, Mr. Booker had knowledge about every package or thing, that goes into assigned trucks at any given time, and the trucks' delivery routes.

17.     Plaintiffs were asked to use this same truck #231728, with unsecure lock system for their deliveries. The truck was broken into several times, and customers' packages were stolen by unknown third party or parties.

18      From December 2014 to September 2016, FedEx delivery tucks' security locks
have been compromised, trucks broken into and customers' packages stolen, eleven
(11) separate occasions while different drivers were on their delivery routes.


19.     Eight (8) out of the eleven (11) times, when FedEx delivery trucks were
compromised and customers' properties stolen, truck #231728, was the truck broken
into – same truck Mr. Howard, Mr. Cain and three other drivers used, that was
burglarized by unknown third-parties, and for which they were terminated.  The other
three instances happened with different trucks, but with same wristband driver keys as
truck #231728.


20.     On or about December, 2014, Mr. Andre Johnson's truck was compromised and
customers' properties were stolen, and as a result, Mr. Johnson was later terminated
about January 20, 2014.


21.     Sometime in April, 2015, Mr. Harold Jackson's truck was compromised and
customers' properties were stolen. Consequently, Mr. Jackson was terminated on or
about June 4, 2014.


22.     On September 3, 2015, Plaintiff Mr. Howard's truck #231728 was compromised
and customers' computers were stolen.

23.     On December 2, 2015, Mr. Howard's truck #231728 was again, compromised and customers' computers were stolen. Mr. Howard was terminated as a result.

24.     On February 26, 2016, Mr. Randy Baldwin's truck #231728 (the same truck used by Mr. Howard) was compromised and customers' properties were stolen. Mr. Baldwin was never disciplined. He was never suspended or terminated, and is still employed by Defendants to-date.

25      On February 29, 2016, Plaintiff Mr. Cain's truck (same truck #231728), was compromised and customers' property was stolen.

26.     On March 7, 2016, Mr. Cain's truck (same truck #231728) was compromised and customers' property was stolen.

27      On or about March 5, 2016, for the third time, Mr. Cain's truck (same truck #231728) was comprised and customers' properties were stolen. Consequently, Mr. Cain was suspended with pay, and later terminated. During these incidents, Defendants knew or should have known that something must be wrong with this particular truck and could have repaired it but they failed to do so.

28.     On or about March 15, Mr. Glenis Cole's truck (same truck #231728) was comprised and customers' properties were stolen. Mr.  Glenis Cole was never

disciplined. He was never suspended or terminated, and is still employed by Defendants to-date.

29.    Sometime between September and November 2016, Mr. James Snyder's truck #230375, was compromised and customers' properties were stolen. Mr. Snyder was suspended but was later brought back, and is still employed by FedEx.

30.    On or about August, 3, 2016, Mr. Mike Myers's truck (same truck #231728) was compromised and customers' properties were stolen. Consequently, Mr. Myers was terminated.

31.    Although the circumstances surrounding the break ins of the trucks operated by all employees mentioned herein, especially Mr. Howard, Mr. Baldwin, Mr. Cain, and Mr. Cole were eerily the same (invariably due to the fact that truck #231728's lock system was defective), in all relevant and material respects, Mr. Baldwin, and Mr. Glenis Cole were never disciplined. They were not terminated and both are still working for Defendants to-date. Also, although Mr. Snyder was suspended, later, he was reinstated.

32.    Common to all Defendants' trucks that was compromised since December 2014, is that they were all wristband lock system trucks. The driver wears a wristband programed security key system that is used to swipe open their trucks, when they want

to open it. The vehicle is locked automatically by shutting the door. (**See attached Exhibit A) (**Photos of the truck showing the lock system).

33.    The relevant packages were all stolen when Plaintiffs packed their trucks, locked it, and went to deliver packages, and before they returned back to their trucks to continue to their next delivery.

34.    Plaintiffs told Defendants that they have no knowledge of how their truck (same truck #231728), was broken into at the respective times, had nothing to do with the burglary/theft of the missing packages, and or how the packages were stolen. They also told Defendants that they locked their trucks at all times when they left the truck to deliver packages, and had nothing to do with the missing packages. There was nothing obvious to show that the truck had been compromised, only when it was realized that packages were missing.

35.    However, despite no wrongdoing, and no evidence that Plaintiffs did not lock their trucks, or were responsible for the burglaries/theft of the missing packages, Mr. Howard and Mr. Cain were terminated under Defendants' policy that impliedly states that employees like Plaintiffs will be terminated only for cause, or in other words, if it was proven that they left their vehicle unsecured, and or was responsible for burglaries/theft of customers' properties in their custody.

36.    Mr. Howard was also terminated in breach of an express provision of FedEx policy that termination would occur only after three (3) such repeated incidents and warnings within 12 calendar months. **(See attached Exhibit B)** (Warning Letter dated 9/16/2015). While the three times policy was applied to Mr. Cain, (Mr. Cain was terminated after the same truck #231728)) was burglarized for the third time), Mr. Howard was terminated after only two occurrences.

37.    Furthermore, Plaintiffs Mr. Howard and Mr. Cain, were wrongfully terminated for Defendants' own negligence in putting into service/on the road, wristband swipe opening device trucks that they knew or should have known, has defective lock system that was not reasonably apparent to Plaintiffs at the relevant times when their trucks were compromised.

38.    Plaintiffs were also terminated under circumstances where there could certainly be other explanations as to how, and who was breaking into the same truck, and given the fact that the master key to same truck, that could open the truck at any time, was missing, and had not been accounted for, by the custodian, or Defendants.

39.     When Mr. Howard returned from his first suspension on September 16, 2015, Mr. Lyers, Defendants' security officer, told him that "we discovered that your truck's bulkhead door is broken". Mr. Marcus Lyers also informed Mr. Howard that it had been fixed. And in the warning letter with same date, given to Mr. Howard, Defendants noted that the cause of the break-ins that allowed unknown third parties to

open the trucks when it was parked, and steal customers' packages, was "possibly as a result of a defective door" which Plaintiffs are not responsible for but Defendants.

40.     When Mr. James Snyder's truck was broken into and customers' packages were stolen, he was suspended. During his suspension, Mr. Rick Basil was asked by Defendants, to replace Mr. Snyder, i.e. to use his truck – the same truck that was compromised to cover his route. Mr. Basil refused to drive the truck. He explained that his reason for refusing to drive this particular truck, to the security guy, Mr. Marcus Lyers – because "the truck was not secure." In an effort to persuade Mr. Basil to use the truck, Mr. Marcus Lyers told Mr. Basil he need not worry because "the truck was secure." Not persuaded by Mr. Lyers, Mr. Basil demonstrated to Mr. Lyers, on the spot, how unsecure the truck was, by shocking the door of the locked truck open without much effort. Still at this point, Defendants failed to effectively fix the problem lock on truck #231728.

41.     After Mr. Howard was terminated, Mr. O'Reilly asked Mr. Cain to cover Mr. Howard's route. Mr. Cain told him that he was not comfortable driving Mr. Howard's former truck #231728, because it was not secure, given the several burglaries of the truck. Mr. O'Reilly told Mr. Cain "don't worry because the truck is now secured – we have fixed it." So, Mr. Cain agreed to use the truck.

42.     A little later, Mr. Cain then went on vacation. While on vacation, Mr. Baldwin used same truck #231728 and on February 29, 2016, the truck was broken into, once

more, after Mr. O'Reilly claimed to Mr. Cain, before his vacation, that "we have fixed it." When Mr. Cain returned from vacation, Mr. Baldwin informed him that the truck was broken into while he was on vacation. Mr. Cain was also told by Mr. Mike Anderson and Mr. Richard Evans, to watch out and keep an eye on the truck because it was broken into again, while he was away on vacation.

43.     It was obvious given the number of break-ins that the wristband trucks security door system was not at all secure, and Defendants were aware of this fact, or should have been aware of it. It is the sole responsibility of FedEx and its officers, to send their drivers out to make deliveries of customers' packages in a non-defective secure truck: It is also the sole responsibility FedEx and its officers, to repair a broken truck lock system before putting it into service, so as to prevent third parties from compromising the truck locks, and from stealing their customers' delivery packages.

44.     When Mr. O'Reilly asked another employee, Mr. Terry Nolan to take over Mr. Howard's truck after he was terminated, he declined to do so, because "you wrongly fired my boy Al" (Alfred Howard).  When Mr. Nolan made clear his position about not taking over Mr. Howard's truck and his displeasure about Mr. Howard's termination, Mr. Lyers replied: "Forget about Al, you do not know the whole truth about Al." To which Mr. Nolan responded: "I have known Al for over 20 years, and Al is not like that." This exchange happened in the presence of both Mr. Cain and Mr. Glenis Cole who heard the defamatory innuendo from Mr. Marcus Lyers.

45.     On or about May 19, 2016, FedEx Head of Security Ms. Jamie, called Mr. Terry

Nolan to her office for a meeting. During the meeting, Ms. Jamie asked Mr. Nolan, to

meet with her. During the meeting, she asked Mr. Nolan whether he felt safe using Al

Howard's truck (truck #231728)? Mr. Nolan responded that he did not feel safe using

it because there was a crack on the door, and the door could not close properly. Then

Ms. Jamie asked whether Mr. Nolan knew Al Howard, and whether he is still working

at the baseball arena? Mr. Nolan responded: "I know Al, but I have not talked to him

for a while (Mr. Howard was terminated on 12/23/15). Mr. Nolan then told Ms. Jamie

that from what he heard, Mr. Howard's former truck (truck #231728), had been

broken into over seven (7) times, to which Ms. Jamie, the head of security, responded

"that is not true." Then Mr. Nolan told Ms. Jamie if she doubts him, she should ask or

talk to Mr. Glenis Cole. (Mr. Cole used same truck #23172) eight months after Al

Howard was terminated and the same truck was also compromised when he used it for

deliveries and customers' packages stolen – same incident and reason for Mr.

Howard's termination. The head of security, Ms. Jamie was well aware of this, or

should have known that truck #231728 had been broken into so many times

irrespective of who was driving it. At that point, Ms. Jamie abruptly ended the meeting

with Mr. Nolan.

## Mr. Alfred W. Howard Jr.:

46.     Mr. Howard started working for FedEx on October 27, 1997 as a full-time

Courier, and continued doing so, until he was terminated on December 23, 2015, for

failure to secure property pursuant to Defendants "Acceptable Conduct Policy (P2-5)" of the "People Manual" – Custodial loss of company or customer property. Mr. Howard was suspended on December 11, 2015 and subsequently terminated on December 23, 2015 **(See Attached Exhibit C)**. Mr. Howard was terminated under "Warning Letter/Recurrent Patterns.

47.    According to Defendants' policy, termination is impliedly warranted only for cause, i.e. if an employee is found to have done something wrong in violation of Company policy.

48.    Defendants' policy handbook and manual also provide for a "Guaranteed Fair Treatment Procedure, P5-5 ("GFTP") – a progressive appeal process that Defendants' policy allows an employee to take, when they "in good faith believe this action to be unfair"- a suspension or termination. The GFTP obligates both employer and employee, to follow certain regimented procedures, like limitation on time periods, and manner the appeal must be made. **(See attached Exhibit D).**

49.    Mr. Howard was terminated in violation of this policy, because he was not given the benefit of contract/policy that FedEx by their own terms, promised to adhere to, in good faith.

50.     Although Mr. Howard was suspended and terminated, both his suspension and termination letters, other than by defamatory innuendo, did not say he was responsible for the missing computers from his truck. Also, both his suspension and termination letters failed to spell out what "misconduct" Mr. Howard committed and/or a causal link, if any, of such conduct, to the missing computers other than, that the packages were stolen from his parked truck (which he locked), in his absence, while he was delivering other packages.

51.     After his termination, Mr. Howard exercised his rights to collect unemployment. However, Defendants opposed his receiving the benefit, and claimed that he was not entitled to unemployment because Mr. Howard was discharged for misconduct - "failure to secure property on his delivery vehicle." However, the D.C. Department of Employment Services, ("DOES") determined that Mr. Howard was eligible for unemployment and accordingly, awarded him unemployment benefits.

52.     In its determination, the DOES, among other things, noted:

> "The claimant was discharged for failure to secure property on his delivery vehicle. The claimant denies this allegation and states that he locked his vehicle prior to making deliveries so he was unaware as to how the items turned up missing."
> "The employer has the responsibility to provide evidence of misconduct. In this case, the employer has not provided sufficient evidence to demonstrate misconduct on the part of the claimant. Therefore, work related misconduct on the part of the claimant has not been established." **(See attached Exhibit E).**

53.     Prior to his termination, Fed Ex had experienced some break-ins into delivery trucks resulting in customers' packages being missing. Same incident happened with

other drivers and their trucks, who like Mr. Howard, were assigned same kind of trucks - with a wristband door opening device. For example, Mr. Andre Johnson and Mr. Harold Jackson.

54.    On or about December, 2014, Mr. Andre Johnson's wristband truck was compromised and customers' properties were stolen, and as a result, Mr. Johnson was later terminated about January 20, 2014.

55.    Sometime in April, 2015, Mr. Harold Jackson's wristband truck was also compromised and customers' properties were stolen. Consequently, Mr. Jackson was terminated on or about June 4, 2014.

56.    On September 3, 2015, after mistakenly, manually entering delivery information of certain packages into the system, Mr. Howard later discovered that they were not delivered but was missing. Mr. Howard immediately communicated with his manager Daryl Anderson, and Oda Tynes, informing them that packages from his truck was missing and his follow up actions of putting that information in the system.

57.    On September 4, 2015, Mr. Howard returned to the target delivery area and visited delivery addresses for the missing packages to confirm that the relevant packages were not delivered.

58.    After his truck was burglarized, Mr. Marcus Lyers from security interviewed

Mr. Howard. During the interview, Mr. Lyers asked Plaintiff Mr. Howard several

questions: "Did you leave the packages on the hand-cart?" Mr. Howard answered No!

"Did you leave the packages out somewhere?" Mr. Howard answered No! "Did you

give the packages to someone?" Mr. Howard said No! Mr. Howard explained to Mr.

Lyers, that his delivery sequence for his last five (5) stops, was that he made each

delivery without use of the hand cart, i.e., they were carried by hand, individually one

by one, at time of delivery.  Mr. Howard also informed the security officer, Mr. Lyers

that at no time did he leave his truck door or windows unlocked, or open.


59.    On September 8, 2015, as a result of the 9/3/15 incident, Mr. Howard was

suspended with pay for eight days pending management investigation. On his return

from suspension on September 16, 2015, he was given a written warning that among

other things stated that "your vehicle was not properly secured possibly as a result of a

defective door…" Also the warning letter stated: "In accordance with policy, this

Warning Letter will remain active for twelve months. Any three (3) notifications of

deficiency [i.e., any combination of Warning Letters and/or Performance Reminders]

received within a 12-month period may result in termination." **(See again, attached**

**Exhibit B).**


60.    Mr. Howard repeatedly informed his managers and Defendants of the lack of

accountability of the keys for his and other vehicles at Defendants' station where he

worked. There have been times when the keys to his vehicle were lost or misplaced and could not be found. At this particular FedEx station in his group, only one person has access to spare keys that he keeps in a blue bag in his locker. That individual is Mr. Glen Booker.

61.    Prior to the incidents with his truck and termination, Mr. Howard witnessed and questioned Mr. Booker along with his managers and mechanics about the where about of his missing keys. Mr. Howard believes that someone must be in possession of the missing master key to his truck and have been using it to compromise truck #231728 (because Defendants have not repaired or changed the locks), and steal packages, belonging to customers.

62.    Until the day he was terminated, the missing master key to his truck #231728 was never found and was never accounted for.

63.    Although Mr. Howard's truck was wristband operated (used by drivers to open their vehicle), there was also an additional master key that opens his locked truck #231728. Mr. Howard never had custody of that master key. Mr. Booker was the custodian of that master key, and that key was missing during the two instances Mr. Howard's truck was compromised, and also at the other times when other drivers used the truck and it was compromised.

64.    Mr. Howard's wristband key (not the master key), also got missing twice, after he had returned it to the gatekeeper after his delivery, and were replaced twice. Mr. Howard also informed the security officer, Mr. Lyers that at no time did he leave his truck door or windows unlocked or open.

65.    The incident of December 2, 2016, was the second time Mr. Howard's truck was compromised, and customers' packages mysteriously got missing. So, he asked his manager, John O'Reilly, what was going to happen to him since his truck has been burgled twice? Mr. O'Reilly replied that he was going to give Mr. Howard "just a written warning letter for custodial control and not termination." Instead he terminated him in breach of FedEx policy.

66.    Mr. Howard's termination caused him stress, humiliation, and loss of property in his employment and loss of earnings. This, in turn, affected his well-being and that of his family. As a result of his termination, Mr. Howard lost all medical benefits for himself and his family. Mr. Howard is a 52-year-old black male with a family medical history. Due to his termination, he has been unable to financially continue to pay for his medication for a diagnosed high blood pressure. Mr. Howard was unable to afford COBRA because the cost was exorbitant, and his inability to afford it as a result of losing his employment, put him at a high medical risk, and this caused him emotional distress.

67.    Mr. Howard was terminated in breach of express and implied provisions of FedEx policy that termination would occur only after three (3) such repeated incidents and warnings with a 12 calendar months

68.    Mr. Howard was terminated in breach of implied provisions of FedEx policy that termination would occur only for cause

69.    Mr. Howard was terminated in violation of this policy, because he was not given the benefit of contract/policy that FedEx by their own terms, were to adhere to, in good faith.

70.    Mr. Howard was terminated in violation of 42 U.S.C. §1981, because his termination amounted to discrimination in the making and enforcement of his employment contract with FedEx.

71.    Mr. Howard's termination was unlawful because it was Defendants' own negligence that caused Mr. Howard's truck to be compromised, and thus, the proximate cause of him suffering property injury, - loss of his job and employment resulting in loss of wages and benefits.

72.    Mr. Howard was defamed, by his termination, by innuendo, because a reasonable person would believe that because he was terminated, he stole the computers missing from his truck on two occasions, that he had something to do with

the missing packages, or was responsible in any way for the break in into his truck and the loss of the missing packages, even though Defendants had no evidence that he had anything to do with it.

73.    Mr. Howard believes that his termination was without cause, unlawful and in bad faith and unconscionable because he was terminated due to circumstances beyond his control

74.    Because Defendants wrongfully terminated Mr. Howard, Defendants' are liable to Mr. Howard, for compensatory and punitive damages.

## Mr. Hikiem S. Cain:

75.    Mr. Cain started working for FedEx on November 20, 2008 as a full-time "Cover" courier, and continued doing so, until he was terminated on June 24, 2016, for failure to secure property pursuant to Defendants "Acceptable Conduct Policy (P2-5)" of the "People Manual" – Custodial loss of company or customer property. Mr. Cain was suspended on May 6, 2016 and subsequently terminated on June 24, 2016. **(See Attached Exhibit F)**.

76.    According to Defendants' policy, termination is warranted only for cause, i.e. if an employee is found to have done something wrong in violation of policy.

77.    Defendants' policy handbook and manual also provide for a "Guaranteed Fair Treatment Procedure, P5-5 ("GFTP") – a progressive appeal process that Defendants' policy allows an employee to take, when they "in good faith believe this action to be unfair"- a suspension or termination. The GFTP obligates both employer and employee, to follow certain regimented procedures, like limitation on time periods, and manner the appeal must be made. **(See again, attached Exhibit D).**

78.    Mr. Cain was terminated in violation of this policy, because he was not given the benefit of contract/policy that FedEx by their own terms, were to adhere to, in good faith.

79.    Although Mr. Cain was suspended and terminated, both his suspension and termination letters, other than by innuendo, did not say he was responsible for the missing computers from his truck. Also, both his suspension and termination letters failed to spell out what "misconduct" Mr. Cain committed and/or a causal link, if any, of such conduct, to the missing computers other than, that the packages were stolen from his parked truck (which he locked), in his absence, while he was delivering other packages.

80.    Unlike Mr. Howard, even though both he and Mr. Cain were terminated under same circumstances, policy, and were given identical suspension and termination

letters, Mr. Cain's application for unemployment was not challenged and he was able to collect unemployment benefits, after his termination.

81.    Mr. Cain was a full-time "cover" courier for Fed Ex for about eight years. As cover driver, covers delivery routes when someone is absent, for example when a driver is sick, on vacation etc. a hardworking family man, who gets his open P.M. route work done. Mr. Cain was wrongly terminated in violation of federal and the District of Columbia laws.

82.    Truck #231728 (Mr. Howard's truck before he was terminated), which Mr. Cain was asked to drive, was defective, and the whole work group, apparently knew this. Defendants also knew this or should have known, because of the amount of unexplained recurring incidents, on same truck irrespective of who was driving it for delivery purposes.

83.    Mr. Cain told his manager and the security officer several times that he did not want to drive truck #231728 because he did not feel safe in it, but Defendants persuaded him to use it claiming it was secure and safe. However, his truck was compromised and packages stolen.

84.    After, Mr. Cain's truck was burglarized, Mr. Lyers the security officer interviewed Mr. Cain. He told Mr. Cain that he will record the interview. Mr. Cain told him what happened, that he locked his truck and did not leave it open. Mr. Lyers

in response commented that "it seems kind of funny when your truck has been robbed." Mr. Cain responded by pointing out to Mr. Lyers, that Mr. Glenis Cole's truck, same truck #231728 was also robbed.

85.     Mr. Lyers asked Mr. Cain: "What did you do?" Mr. Cain answered that he did his route and knew nothing about the eight (8) missing packages the gatekeeper told him were missing. Mr. Cain told the gatekeeper that he delivered his packages individually, and when he used the hand cart, it was for the individual bulk package alone, delivered right away.

86.     Mr. Cain is not the only person who used truck #231728 and had same experienced of packaged missing mysteriously. As noted above, truck #231728 was compromised about eight (8) times, within 12 months, and involved different drivers, but on the same route

87.     After Mr. Howard was terminated, Mr. O'Reilly asked Mr. Cain to cover Mr. Howard's route. Mr. Cain told him that he was not comfortable driving Mr. Howard's former truck #231728, because it was not secure, given the several burglaries of the truck. Mr. O'Reilly told Mr. Cain "don't worry because the truck is now secured – we have fixed it." So, Mr. Cain agreed to take use the truck.

88.     Mr. Cain then went on vacation. While on vacation, Mr. Baldwin used same truck #231728 and on February 29, 2016, the truck was broken into. When Mr. Cain

returned from vacation, Mr. Baldwin informed him that the truck was broken into while he was on vacation. Mr. Cain was also told Mr. Mike Anderson and Mr. Richard Evans, to watch out and keep an eye on the truck because it was broken into while he was away on vacation. Apparently the truck was not fixed as Mr. O'Reilly claimed.

89.    Mr. Cain, like Mr. Howard, left packages in a locked truck that was supposed to be secure but indeed, was not. Mr. Cain had been on the same P.M. route for five years and never had any problems, until he was asked to use truck #231728.

90.    Defendants' termination of Mr. Cain, caused him and his family a lot of stress, because of loss of wages and benefits to financially take care of his family, and anxiety and emotional pain, for not knowing if, and when he will get another job.

91.    When Mr. Cain, like Mr. Howard, did the responsible thing in informing his manager immediately after, that his truck - truck #231728, was broken into and packages stolen, his manager was not responsive – no investigation was immediately done.

92.    Mr. Cain's managers were unhelpful to him, during his suspension, as they never bothered to return his phone calls. Mr. Cain believes that his termination was without cause, unlawful and in bad faith and unconscionable because he was terminated due to circumstances beyond his control.

93.    Mr. Cain was terminated in breach of implied provisions of FedEx policy that termination would occur only for cause

94.    Mr. Cain was terminated in violation of this policy, because he was not given the benefit of contract/policy that FedEx by their own terms, were to adhere to, in good faith.

95.    Mr. Cain was terminated in violation of 42 U.S.C. §1981, because his termination amounted to discrimination in the making and enforcement of his employment contract with FedEx.

96.    Mr. Cain's termination was unlawful because it was Defendants' ow negligence, that cause Mr. Cain's truck to be compromised, and thus, the proximate cause of him suffer property injury, - losing his employment.

97.    Mr. Cain was defamed, by his termination, by innuendo, because a reasonable person would believe that because he was terminated, he stole the computers missing from his truck on two occasions, even though Defendants had no evidence that he had anything to do with it.

98.    Mr. Cain was also terminated in violation of public policy, because, theft is a crime, it unlawful and against public policy to accuse an individual of theft, punish that individual with any proof whatsoever, and under circumstances that no reasonable

99.   Because Defendants wrongfully terminated Mr. Cain, Defendants' are liable to

Mr. Cain, for compensatory and punitive damages.


**COUNT I**
**(Racial/Intentional Discrimination) in the Making and**
**Enforcement of Contracts in Violation of 42 U.S.C. §1981**
**(All Defendants)**

100.   Paragraphs 1 through 99 above, are incorporated herein by reference and made
this paragraph 100.


101.   Both Mr. Howard and Mr. Cain are Black African American males. At the time

of the incidents that resulted in Plaintiffs' termination, the master key which overrides

the locks on same truck #231728 that Plaintiffs used when unascertained third parties

broke into it and stole packages, had been missing for a while, and Defendants and

their management were aware of that fact. Plaintiffs Mr. Howard and Mr. Cain, never

had custody or control of the missing master key, or any keys for that matter, as they

handed over their keys after their day's work and picked it up the next day, but Mr.

Glen Booker did, as he was the custodian of all the keys including but not limited to

master keys at all relevant times. At all relevant times, Mr. Booker had control of all

FedEx trucks keys in the FedEx depot where Plaintiffs worked. Also, Mr. Booker's

responsibilities/duties includes taking inventory. As part of the inventory system, Mr.

Booker had knowledge about every package or thing, that goes into assigned trucks at

any given time, and the trucks' delivery routes.

102.   However, to Plaintiffs' knowledge and belief, up to the date of their respective

terminations, and to the present, the missing master key for truck #231728, has not

been found or accounted for, by the Defendants and or the custodian of the keys, Mr.

Booker. Yet, Mr. Booker is still employed while Plaintiffs were terminated, even

though they did nothing wrong, and Defendants have no proof that they had any

knowledge about the missing packages. The fact that Mr. Booker has never been held

accountable for the missing keys or asked to account for them, and punished like

Plaintiffs, and also the fact that Defendants sent Plaintiffs out in a truck with a

defective lock system, which jeopardized their ability to do their work as it left them

open to the risk of being robbed, and when they were so robbed, terminated them

without just cause amounts to discrimination in the enforcement of employment

contract in violation of 42 U.S.C §1981.

103.   As a direct and proximate result of Defendants' discharge of Mr. Howard and

Mr. Cain, both Plaintiffs suffered and continue to suffer, among other things, anger,

loss of employment, lost earnings and benefits, severe humiliation, emotional pain,

and suffering, and embarrassment. Consequently, Defendants are liable to Mr. Howard

and Mr. Cain, in damages.

**COUNT II**
**(Racial/Intentional Discrimination – Disparate**
**Treatment) in Violation of 42 U.S.C § 1981**
**(All Defendants)**

104.   Paragraphs 1 through 103 above, are incorporated herein by reference and made this paragraph 104.

105.   Mr. Howard was also terminated in breach of an express provision of FedEx policy that termination would occur only after three (3) such repeated incidents and warnings with a 12 calendar months. While the three times policy was applied to Mr. Cain, (Mr. Cain was terminated after the same truck #231728) was burglarized for the third time, Mr. Howard was terminated after only two occurrences. On February 26, 2016, Mr. Randy Baldwin's truck #231728 (same truck used by Mr. Howard, was compromised and customers' properties were stolen. Mr. Baldwin was never disciplined. He was never suspended or terminated, and is still employed by Defendants to-date.

106.   On or about March 15, Mr. Glenis Cole's truck (same truck #231728) was comprised and customers' properties were stolen. Mr.  Glenis Cole was never disciplined. He was never suspended or terminated, and is still employed by Defendants to-date.

107. Sometime between September and November 2016, Mr. James Snyder's truck #230375, was compromised and customers' properties were stolen. Mr. Snyder was suspended but later brought back, and is still employed by FedEx.

108. Although the circumstances surrounding the break ins of the trucks operated by all employees mentioned herein, especially Mr. Howard, Mr. Baldwin, Mr. Cain, and Mr. Cole were eerily the same (invariably due to the fact that truck #231728's lock system was defective), in all relevant and material respects, Mr. Baldwin, Mr. Glenis Cole, were never disciplined, and Mr. Snyder who was suspended but later brought back were never terminated and all of them are still working for FedEx to-date.

109. Defendants' different treatment of Plaintiffs Mr. Howard and Mr. Cain, as compared to the treatment they gave to Mr. Baldwin, Mr. Cole, and Mr. Snyder, who are similarly situated as Plaintiffs in all respects, because they used same truck #231728, suffered same fate when without their knowledge or responsibility, packages were stolen from it, amounts intentional discrimination and disparate treatment in violation of 42 U.S.C § 1981.

110. As a direct and proximate result of Defendants' discharge of Mr. Howard and Mr. Cain, both Plaintiffs suffered and continue to suffer, among other things, anger, loss of employment, lost earnings and benefits, severe humiliation, emotional pain, and suffering, and embarrassment. Consequently, Defendants are liable to Mr. Howard and Mr. Cain in damages.

### COUNT III:  (Mr. Howard only)
### Promissory Estoppel Based on Policy of 3 warnings
### Within 12-month period before termination

111.   Paragraphs 1 through 110 above, are incorporated herein by reference and made this paragraph 111.


112.   By promulgating the policy that an employee will be terminated after a third notification of deficiency, in their People Manual 2-5 Acceptable Conduct/ Recurring Patterns, FedEx effectively promised that an employee would not be terminated, unless an employee gets a third warning within a 12-month period. And that an employee will be alerted on a third occurrence. This policy was violated, and Mr. Howard was terminated during a second compromise of his truck, which was due to the negligent failure of Defendants to repair the defective lock on the truck they assigned to him.


113.   By notifying Mr. Howard in a warning letter dated September 16, 2015, that "in accordance with policy, this warning letter will remain active for twelve months. Any three (3) notifications of deficiency [i.e., any combination of warning letters and/or Performance Reminders] received within a 12-month period may result in termination", FedEx promised that an employee would not be terminated, unless an employee gets a third warning within a 12-month period.

114.   Mr. Howard reasonably relied upon FedEx' promise that he would not be

terminated before 3 warning occurrences, to his detriment.


115.   As a direct and proximate result of FedEx violation of this policy by terminating

Mr. Howard after only a second alleged conduct, Mr. Howard suffered and continues

to suffer, among other things, loss of employment, lost earnings, and benefits, severe

humiliation, emotional pain, suffering, and embarrassment. Consequently, Defendants

are liable to Mr. Howard in damages.


## COUNT IV
## (Breach of the Duty of Good Faith and Fair Dealing

116.   Paragraphs 1 through 115 above, are incorporated herein by reference and made

this paragraph 116.


117.   In *Draim v. Virtual Geosatellite Holdings, Inc*., 631 F. Supp. 2d 32, 39 (D.D.C.

2009, this Court stated:

> Under the law of the District of Columbia, the mutual promise to employ
> and serve creates a contract terminable at the will of either party. Unless
> the parties agree to enter into a contract for a fixed duration or a written
> contract for permanent employment, the employee will be regarded as
> terminable at will. [Nonetheless,] every contract is deemed to contain an
> implied covenant of good faith and fair dealing that means that neither
> party shall do anything that would have the effect of destroying or
> injuring the right of the other party to receive the fruits of the contract.


118.   FedEx breached this implied covenant of good faith and fair dealing when it

terminated Plaintiffs without just cause and without proof of any violation of policy or

wrong doing. The 2-5 People Manual 2-5 Acceptable Conduct/ Recurring and the FedEx Handbook with its progressive discipline procedures implicitly if not expressly, states that in essence, that an employee will be disciplined or terminated for cause – if they fall short of "acceptable conduct".  The identical reason given by Defendants for terminating Mr. Howard and Mr. Cain, is: "06-30-T-Fail Secure Property", and "…while performing deliveries out of the WASA Station, 1501 Eckington Place NE, you lost custodial control…" Defendants never claimed the loss of control was Plaintiffs' fault – just that they lost control. However, Plaintiffs lost control because FedEx put in service, and asked Plaintiff to drive them to deliver customers' goods, a particular truck that by Defendants' own account, had a "defective lock."

119.   As a direct and proximate result of FedEx violation of their duty of good faith and fair dealing in their contract with Plaintiffs, by terminating without proof of any wrongdoing, Mr. Howard and Mr. Cain, suffered and continue to suffer, among other things, loss of employment, lost earnings, and benefits, severe humiliation, emotional pain, suffering, and embarrassment. Consequently, Defendants are liable to Mr. Howard and Mr. Cain, in damages.


### COUNT V - (Breach of Express Contract) – (Mr. Howard only)

120.   Paragraphs 1 through 119 above, are incorporated herein by reference and made this paragraph 120.

121.   Mr. Howard was terminated in breach of express and implied provisions of FedEx policy that termination would occur only after three (3) such repeated incidents and warnings with a 12 calendar months. According to FedEx People Manual, termination was only warranted after three (3) instances of alleged misconduct**. (See again, attached Exhibits B, and D).**

122.   Defendants actions in terminating Mr. Howard after only two (2) incidents of alleged misconduct, amounts to breach of Defendants' express contract and policy regarding disciplinary procedures.

123.   As a direct and proximate result of FedEx breach of their express contract with Mr. Howard, he suffered among other things, loss of employment, lost earnings, and benefits, severe humiliation, emotional pain, suffering, and embarrassment. Consequently, Defendants are liable to Mr. Howard, in damages.

## COUNT VI
### Breach of Implied Contract Constituted in the People Manual
### And the FedEx Handbook for Misconduct and Discipline
### And Guaranteed Fair Treatment Procedure (GFTP)

124.  Paragraphs 1 through 123 above, are incorporated herein by reference and made this paragraph 124.

125.  FedEx' People Manual page 2, lists conducts that are classified as "misconduct". Among other things listed, is, "custodial loss of company or customer property."

126.  Before listing the misconducts, the manual states:

> "FedEx Express requires a high degree of personal integrity and responsibility of its employees. Violations of Company or departmental rules may constitute   misconduct for which an employee may be immediately suspended with pay, pending a complete investigation. All alleged violations should be thoroughly investigated and documented. Disciplinary decisions should be based on a logical analysis of the evidence."

127.  Also, FedEx People Manual 5-5 Guaranteed Fair Treatment Procedure, provides: "should you in good faith believe this action is unfair, you have the right to enter the GFTP complaint process."

128. Plaintiffs understood and relied on FedEx above quoted statements in the handbook and the people manual, misconduct lists provisions, including, but not limited to "custodial loss of company or customer property", to mean that no adverse employment action will be taken against them, unless, they were responsible for the "custodial loss of company or customer property."  That all alleged violations will be thoroughly investigated and documented and disciplinary decisions will be based on a logical analysis of the evidence.

129   Furthermore, Plaintiffs relied on the Guaranteed Fair Treatment Procedure, that any allegation against them will be fairly and honestly conducted, and that their innocence established, and consequently no adverse action will be taken against them.

130.   Nevertheless, FedEx intentionally discharged without cause. Defendants knew or should have known that Plaintiffs were not responsible for the missing packages, had no knowingly about who did it. Defendants failed to be fair in their treatment of Plaintiffs as their guaranteed fair treatment procedure is nothing but in name and Defendants failed to thoroughly investigate the alleged violations against Plaintiffs document their findings and give detail report of it to Plaintiffs, and make any relevant disciplinary decision if applicable, based on a logical analysis of the evidence."

131.   Defendants actions amounts to a breach of the implied contract constituted in the People Manual and the FedEx Handbook for Misconduct and Discipline, and Guaranteed Fair Treatment Procedure with Plaintiffs.

132.   As a direct and proximate result of FedEx breach of the implied contract, Mr. Howard and Mr. Cain, suffered and continue to suffer, among other things, loss of employment, lost earnings, and benefits, severe humiliation, emotional pain, suffering, and embarrassment. Consequently, Defendants are liable to Mr. Howard and Mr. Cain, in damages.

## COUNT VII - (Negligence)

133.   Paragraphs 1 through 132 above, are incorporated herein by reference and made this paragraph 133.

134.   Defendants have a duty to provide Mr. Howard and Mr. Cain, with a secure truck to carry out their delivery duties. As their employer, it is Defendants duty to provide them with a safe, but not a defective equipment (truck with a defective door). By extension, it is Defendants duty to ensure that customers' packages are transported in a truck with a secure lock.

135.   FedEx breached that duty, when due to its own, and its agents' negligence, introduced wristband swipe opening device trucks with defective lock system, into service and obligated Plaintiffs to drive it.

136.   Defendants knew that the truck #231728 was defective. This was evident as expressed in Defendants' warning letter to Mr. Howard, the first time the truck was compromised by unknown third party. In that letter, Defendants among other things, stated: "A Company investigation began which determined that your vehicle was not properly secured possibly as a result of a defective door …"

137.   Defendants knew or should have known that truck #231728 was defective, as it has a recurrent history of being compromised and customers' packages stolen when such occurrence has happened eleven (11) times with different drivers.

138.   Because of Defendants' breach of this duty, Plaintiffs were terminated (albeit wrongly), and suffered injury, and defendants' negligence in putting a defective truck in service, was the proximate cause of their injury, and defendants knew, or should have known that a truck with a defective lock could be compromised and customers' packages stolen, when the driver of the truck is delivering other packages to their owners.

139.   As a direct and proximate result of FedEx breach of the implied contract, Mr. Howard and Mr. Cain, suffered and continue to suffer, among other things, loss of employment, lost wages, and benefits, severe humiliation, emotional pain, suffering, and embarrassment. Consequently, Defendants are liable to Mr. Howard and Mr. Cain, in damages, pursuant to general D.C. general negligence law, and also, D.C. Code §35-301. (Liability of common carriers for injuries to employees).

## COUNT VIII
### Defamation by Innuendo: Slander per Se
### (Or in the alternative, Slander)

140.  Paragraphs 1 through 139 above, are incorporated herein by reference and made this paragraph 140.

141.   When Mr. Nolan refused to taking over Mr. Howard's truck and expressed his displeasure about Defendants wrongful termination of Mr. Howard, security officer Mr. Marcus Lyers, replied: "Forget about Al, you do not know the whole truth about Al." To which Mr. Nolan responded: "I have known Al for over 20 years, and Al is not like that."

142.   Mr. Lyers statement amounts to slander per se, because by his statement, Mr. Lyers by innuendo, impugned Mr. Howard's character by imputing criminal conduct to Mr. Howard – theft of the missing computers that were stolen from defective truck #231728.

143   In the alternative, Mr. Lyers statement amounts to slander because by his statement, Mr. Lyers by innuendo, impugned Mr. Howard's character by insinuating that there was evidential proof that Mr. Howard had anything to do with theft of the missing computers that were stolen from defective truck #231728, thus making his termination warranted, when in fact, that was false.

144.   Mr. Lyers made and published his statement to Mr. Nolan, and in the presence of two other employees, Mr. Hikiem Cain, and Mr. Glenis Cole, who heard the exchanges between Mr. Nolan and Mr. Lyers.

145.   Mr.  Lyers as the security officer of the Defendants knew or should have known that his statement was defamatory and untrue, because Mr. Howard was wrongly terminated without any wrong doing.

146.  Mr. Lyers did not have any privilege to publish his statement to other employees, especially as it was not true. Mr. Lyers statement was reckless and or amounted to negligence, as a result, Mr. Howard suffered injury.

147.   Mr. Cain and Mr. Howard also were defamed, by their termination, by innuendo, because a reasonable person would believe that because they were terminated, he stole the computers missing from his truck on two occasions, even though Defendants had no evidence that they had anything to do with it.

148.   As a consequence of Mr. Lyers, defamation of Mr. Howard, Defendants are liable to Mr. Howard, in damages for their slander per se, and libel by innuendo, of him and liable to Mr. Cain, by Defamation by innuendo.

149.   As a direct and proximate result of Defendants' Defamation of Mr. Howard and Mr. Cain, Defendants are liable to Plaintiffs in damages.

**WHEREFORE,** Plaintiffs Mr. Howard and Mr. Cain, respectfully requests that this Court:

(a)  Enter judgment on behalf Plaintiffs Mr. Howard and Mr. Cain, against the

Defendants FedEx and John O'Reilly;

(b)  Award Plaintiffs Mr. Howard and Mr. Cain respectively, back pay and front pay;

(c)  Award Plaintiffs Mr. Howard and Mr. Cain respectively, compensatory, including

pain and suffering in the amount of $5,000,000 each on Counts I, II, III, VI, VII

and VIII;

(d)  Award Plaintiffs Mr. Howard and Mr. Cain respectively, punitive damages against

Defendants FedEx and John O'Reilly in the amount of $3,000,000 each;

(e)  Award Mr. Howard compensatory damages on his promissory estoppel claim Count

III, to the tune of $2,000,000 against Defendants FedEx and John O'Reilly;

(f)  Award Mr. Howard compensatory damages on his breach of express contract claim

Count V, to the tune of $2,000,000 against Defendants FedEx and John O'Reilly;

(g)  Award Plaintiffs Mr. Howard and Mr. Cain, their court costs, expenses, attorneys'

fees, prejudgment and post-judgment interest;

(h)  Declare that Defendants conduct is in violation of Section 1981;

(i)  Declare that Defendants are liable to Mr. Howard and Mr. Cain in damages on

Count VI (negligence), pursuant to D.C. Code §35-301.

(j)  Grant such other relief as this Court deems just and proper.

.

## DEMAND FOR JURY TRIAL

TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY A JURY.


Respectfully submitted this 23rd day of December, 2016


/s/ Stephen Christopher Swift
Stephen Christopher Swift
D.C. Bar No. 428459
Swift & Swift, Attorneys at Law, P.L.L.C.
2121 Eisenhower Avenue, Suite 200
Alexandria, Virginia 22314-4688
Telephone: (703) 418-0000
Facsimile: (703) 535-8205
E-mail: steve@swift.law.pro

Attorney for Plaintiffs
Alfred Wendell Howard, Jr.
and Hikiem Sharodd Cain