**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

ALFRED WENDELL HOWARD, JR.                 )
and HIKIEM SHARODD CAIN,                    )
                                           )
    **Plaintiffs,**                         )
                                           )
      **v.**                            )     **Case No. 16-cv-02514 (APM)**
                                           )
FEDERAL EXPRESS CORPORATION                 )
and JOHN O'REILLY,                          )
                                           )
    **Defendants.**                         )

———————————————————————

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alfred Howard and Hikiem Cain bring the present action against Defendants Federal Express Corporation ("FedEx") and John O'Reilly, a FedEx Operations Manager, asserting discrimination claims under 42 U.S.C. § 1981 and common law claims arising from the termination of their employment with FedEx. Before the court are the following motions: (1) Defendant FedEx's Partial Motion to Dismiss; (2) Defendant O'Reilly's Partial Motion to Dismiss; and (3) Plaintiffs' Motion for Leave to Amend.

For the reasons herein, the court grants in part and denies in part Plaintiffs' Motion for Leave to Amend. Because portions of the Amended Complaint are now the operative pleading in this matter, the court denies as moot Defendants FedEx's and O'Reilly's Partial Motions to Dismiss. The court assumes the parties' familiarity with this matter and therefore references the factual allegations only as necessary to resolve their disputes.

## I.    BACKGROUND

Plaintiffs are African-American males and former FedEx couriers who were suspended and subsequently terminated for losing custodial control of packages while performing deliveries in

Washington, D.C. *See* Compl., ECF No. 1 ¶¶ 5–6; Compl., Howard Termination Letter, Ex. C, ECF No. 1-7; Compl., Cain Termination Letter, Ex. F, ECF No. 1-10. Plaintiffs filed the present action on December 23, 2016. The original Complaint alleges the following claims: (1) racial and intentional discrimination in the making and enforcement of contracts in violation of 42 U.S.C. § 1981 (Count I); (2) disparate treatment in violation of 42 U.S.C. § 1981 (Count II); (3) promissory estoppel as to Howard only (Count III); (4) breach of the duty of good faith and fair dealing (Count IV); (5) breach of express contract as to Howard only (Count V); (6) breach of implied contract (Count VI); (7) negligence (Count VII); and (8) defamation (Count VIII).

Defendant FedEx moved to dismiss Counts I, III, IV, V, VI, and VII of the Complaint on April 11, 2017. Def. FedEx Mot. to Dismiss, ECF No. 7 [hereinafter FedEx. Mot]. After FedEx's Motion ripened, Defendant O'Reilly moved to dismiss Counts I, III, IV, V, VI, VII, and VIII of the Complaint on May 30, 2017. Def. O'Reilly's Mot. to Dismiss, ECF No. 19 [hereinafter O'Reilly's Mot.]. Plaintiffs opposed O'Reilly's Motion, but before that Motion ripened, they sought leave of court to amend their Complaint. Pls.' Mot. for Leave to Am. Compl., ECF No. 22 [hereinafter Pls.' Mot. to Am.]. Plaintiffs' proposed Amended Complaint re-alleges the same claims as their original Complaint, but now expressly names O'Reilly as a Defendant as to all eight Counts and alleges additional facts concerning O'Reilly's conduct. *See generally* Pls.' Mot. to Am., Proposed Am. Compl., ECF No. 22-2 [hereinafter Am. Compl.]. Defendants oppose Plaintiffs' Motion for Leave to Amend on the ground that amendment would be futile because Plaintiffs' proposed changes to the operative complaint would not survive a motion to dismiss. Defs.' Opp'n to Pls.' Mot. to Am., ECF No. 25, at 2–3; *see In re Interbank Funding Corp. Secs. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010) (stating that a district court

may deny leave to amend "on grounds of futility where the proposed pleading would not survive a motion to dismiss").

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) instructs courts to "freely give leave" to a party seeking to amend its pleadings.   The Supreme Court has emphasized that Rule 15(a)'s "mandate is to be heeded."   *Foman v. Davis*, 371 U.S. 178, 182 (1962).   "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."   *Id.*   Denying leave to amend is "inconsistent with the spirit of the Federal Rules" and an abuse of discretion, *id.*, unless the court provides a sufficient reason for so doing, such as "futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments," *Boyd v. Dist. of Columbia*, 465 F. Supp. 2d 1, 3 (D.D.C. 2006).

Given the posture of the case—pending motions to dismiss and a pending motion to amend—in the interest of judicial efficiency, the court will evaluate Defendants' arguments for dismissal against the claims and allegations presented in the proposed Amended Complaint, not against the Original Complaint.   If the proposed Amended Complaint states cognizable claims, the court must allow the amendment as to those claims.   The court evaluates Plaintiffs' arguments for dismissal under the familiar standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

For the reasons discussed below, the court grants Plaintiffs' Motion for Leave to Amend in part and denies it in part.   Therefore, the proposed Amended Complaint shall become the operative pleading for the surviving claims.   Accordingly, Defendants' Partial Motions to Dismiss are denied as moot.   *See Johnson v. Panetta*, 935 F. Supp. 2d 244, 248, 250–51 (D.D.C. 2013).

## III.    DISCUSSION

### A.    Breach of Contract and Breach of Duty of Good Faith and Fair Dealing

The court concludes that Plaintiffs' claims premised on the existence of an express or implied employment contract would not survive a motion to dismiss.   Leave to amend Counts IV, V, and VI therefore is denied as futile.

Plaintiffs contend that these claims should survive because their employment with FedEx was governed by FedEx's "People Manual," which outlines a host of policies pertaining to employment with FedEx.   As relevant here, the People Manual contains a progressive discipline policy—the "Acceptable Conduct Policy"—and a progressive appeals process for disciplinary actions—the "Guaranteed Fair Treatment Procedure."   Am. Compl. ¶¶ 59–62, 88–91.[1]   Plaintiff Howard asserts in Count V that, by terminating him after only two instances of alleged misconduct, Defendants breached an express contract with him purportedly providing that termination may occur only after three instances of alleged misconduct within a twelve-month period.   Am. Compl. ¶¶ 147–51.   Plaintiffs additionally assert in Count VI that provisions in the People Manual created an implied obligation on Defendants' part not to terminate them without cause.   Am. Compl. ¶¶ 152–63; *see* Pls.' Opp'n to FedEx's Mot., ECF No. 10-1 [hereinafter Opp'n to FedEx's Mot.], at 2.   The court rejects Plaintiffs' assertions.

For starters, Plaintiffs fail to allege that Defendant O'Reilly was a party to any implied or express employment contract.   They assert only that O'Reilly "knew and understood" FedEx's policies as outlined in the People Manual.   *E.g.*, Am. Compl. ¶¶ 148, 160.   That allegation is

---

[1] The court may consider FedEx's People Manual because Plaintiffs have attached and/or incorporated relevant portions of the Manual by reference to their Complaint.   *See Rand v. Sec'y of the Treasury*, 816 F. Supp. 2d 70, 72–73 (D.D.C. 2011).

plainly insufficient to create a contract between O'Reilly and Plaintiffs. Accordingly, Plaintiffs fail to state a claim against O'Reilly as to Counts IV, V, and VI.

As to Defendant FedEx, the court reaches the same conclusion, but for different reasons. In the District of Columbia, all employment is presumed to be terminable at-will "unless a contrary contractual intent is clearly expressed." *Turner v. Fed. Express Corp.*, 539 F. Supp. 2d 404, 410 (D.D.C. 2008). "The presumption of at-will employment is rebutted only where the parties clearly state an intention to place limits on the employer's right to terminate." *Id.* Such clear intent may be reflected in an employer's personnel manual or employment handbook, thereby giving rise to an implied contract. *See Clampitt v. Am. Univ.*, 957 A.2d 23, 35 (D.C. 2008). A personnel manual creates an implied employment contract when, as pertinent here, it sets out preconditions that must be met before termination of employment, *Strass v. Kaiser Found. Health Plan*, 744 A.2d 1000, 1013–14 (D.C. 2000), and when the employer publishes or distributes the personnel manual containing those preconditions to all employees, *see Clampitt*, 957 A.2d at 36. Employers may, however, "effectively disclaim any implied contractual obligations arising from such provisions." *Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 505 (D.C. 2002). "The legal effect of such a disclaimer is, in the first instance, a question for the court to decide." *Id.*

Here, Plaintiffs' implied contract claims fail because (1) they have not identified any preconditions that FedEx *must* have fulfilled before termination, and (2) FedEx has expressly disclaimed that the People Manual imposes upon FedEx any contractual obligations. Plaintiffs maintain that the "essence" of the Guaranteed Fair Treatment Procedure ("GFTP") and the language of the Acceptable Conduct Policy contradict the existence of an at-will employment relationship, *see* Opp'n. to FedEx's Mot., at 9–12, but upon review of those provisions, it is clear that FedEx did not intend to limit its right to terminate its employees at-will. To begin with, the

GFTP does not, as Plaintiffs suggest, mandate termination only for cause; instead, the Procedure provides employees a guaranteed process by which to appeal a disciplinary action, explicitly noting that "the outcome [of the process] is not ensured to be in the employee's favor," and that the Procedure "do[es] not create contractual rights regarding termination or otherwise." FedEx's Mot., GFTP, Ex. B, ECF No. 7-3, at 334, 336. And, despite Howard's preferred interpretation, the Acceptable Conduct Policy is clear that "progressive discipline is not required and issuance of a Warning letter is not a prerequisite for termination." FedEx's Mot., Acceptable Conduct Policy, Ex. C, ECF No. 7-4 [hereinafter Acceptable Conduct Policy], at 89. Thus, the text of the specific policies upon which Plaintiffs rely do not evince an intent to deviate from at-will employment.

Moreover, as a general matter, the People Manual expressly disclaims any notion that it constitutes a contract. The Manual proclaims, in bold print:

> The FedEx Express People Manual is not a contract of employment, nor should its provisions be read or implied to provide for one. The People Manual provides guidelines for management and employees. It does not create legal rights or obligations regarding any aspect of your employment relationship. This manual is intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions.

*See* FedEx's Mot., 2015 People Manual Disclaimer, Ex. A, ECF No. 7-2; FedEx's Mot., 2016 People Manual Disclaimer, Ex. B, ECF No. 7-3. If that disclaimer language were not clear enough, the People Manual states in the very next sentence: "Nothing in this manual shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party." *Id.*; *see* Acceptable Conduct Policy, at 94; FedEx's Reply in Supp. of Mot. to Dismiss, ECF No. 12, Ex. 1, ECF No. 12-1, at 324. No employee who reads the forgoing disclaimers could reasonably believe that the People Manual creates any enforceable contractual

obligations. Therefore, consistent with District of Columbia law, the court finds that the People Manual does not create judicially enforceable contractual rights. *E.g.*, *Grove v. Loomis Sayles & Co.*, 810 F. Supp. 2d 146, 149 (D.D.C. 2011) ("Even if the employer has provided its employees with an employee handbook, the handbook is not enforceable as an employment contract if it disclaims the establishment of contractual obligations and explicitly provides that employment may be terminated at-will.").

Absent the existence of a contract with Defendants, Count IV—Howard's breach of duty of good faith and fair dealing claim—necessarily fails. *E.g.*, *Draim v. Virtual Geosatellite Holdings, Inc.*, 631 F. Supp. 2d 32, 39 (D.D.C. 2009) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 n.28 (D.C. 2000) ("[S]uch a claim [for breach of covenant of good faith and fair dealing] cannot be made by an at-will employee because there is no contract to provide a basis for the covenant.")). Accordingly, leave to amend Plaintiffs' Counts IV, V, and VI is denied.

### B. Promissory Estoppel

In Count III, Plaintiff Howard asserts a claim of promissory estoppel against FedEx and O'Reilly. As grounds for that claim, Howard contends that, when read together, FedEx's September 16, 2015, warning letter to him and its Acceptable Conduct Policy, constituted a promise not to terminate him until after he had been issued three disciplinary letters. Am. Compl. ¶¶ 133–34; *see* Compl., Sept. 16, 2015 Warning Letter, Ex. B, ECF No. 1-6 [hereinafter Sept. 16 Warning Letter], at 1 ("Any three (3) notifications of deficiency . . . received within a 12-month period may result in termination."); Acceptable Conduct Policy, at 89 ("The receipt of three notifications of deficiency within a 12-month period normally results in termination."). FedEx's termination of him without three warnings, Howard asserts, suffices to make out a claim of promissory estoppel.

To sustain a promissory estoppel claim under District of Columbia law, Howard "must show (1) a promise; (2) that the promise reasonably induced reliance on it; and (3) that [he] relied on the promise to his . . . detriment." *Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 55 (D.D.C. 2014). "[A] promise is 'an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promisee that he may justly expect performance and may reasonably rely thereon.'" *Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 247–48 (D.D.C. 2016) (quoting *Choate v. TRW, Inc.*, 14 F.3d 74, 77–78 (D.C. Cir. 1994) (alteration in original)).

Howard's promissory estoppel claim against O'Reilly is plainly deficient. He fails to allege any facts establishing that O'Reilly made any promise to him, merely stating that O'Reilly "knew or should have known about" FedEx's supposed promise not to terminate before the issuance of three warnings. Am. Compl. ¶¶ 135–39. Howard therefore fails to state a claim of promissory estoppel as to O'Reilly. *See Alemayehu v. Abere*, 199 F. Supp. 3d 74, 83 (D.D.C. 2016) (dismissing promissory estoppel claim where plaintiff failed to allege that specific defendant made any promise to plaintiff).

Howard's pleading as to FedEx falls short as well. First, the September 16, 2015, warning letter expressly advised him that "recurrent patterns of behavior will not be tolerated" and that "[a] repeat of this or any other behavioral problem may result in more severe disciplinary action up to and including termination." Sept. 16 Warning Letter, at 1. In other words, Howard was aware that "repeat[ing]" the warned behavior—violating the Acceptable Conduct Policy a second time— could result in termination. Second, the Acceptable Conduct Policy explicitly provides that "an employee may be terminated with less than three notifications of deficiency within a 12-month period." Acceptable Conduct Policy, at 89–90. These provisions make clear that FedEx did not

make any promise to afford Howard three warning letters before terminating him. The court therefore denies Howard leave to amend Count III as futile.

### C.    Defamation

In Count VIII, Plaintiffs assert a defamation claim against both Defendants arising primarily from: (1) a statement of FedEx Security Officer Marcus Lyers, and (2) the very fact of Plaintiffs' termination, which Plaintiffs allege defamed them by innuendo. Am. Compl. ¶¶ 173–85. As to the first basis, Plaintiffs allege that, during a discussion about Plaintiff Howard that occurred after his termination, Lyers said to another FedEx employee about Howard's termination, "Forget about Al, you do not know the whole truth about Al." *Id.* ¶ 174. As to the second ground, Plaintiffs aver that their former co-workers and supervisors—indeed, "[e]veryone who worked at Plaintiffs' station in DC"—wrongly inferred that Plaintiffs were terminated because they had "[some]thing to do with" the loss or theft of customers' packages. Am. Compl. ¶ 179. Only Defendant O'Reilly challenges the sufficiency of the defamation claim made against him.

Plaintiffs' allegations are plainly insufficient to state a claim of defamation against O'Reilly for an obvious reason: O'Reilly is not alleged to have uttered any specific defamatory statement about Plaintiffs. *See Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) ("A plaintiff claiming defamation must show . . . that the defendant made a false and defamatory statement concerning the plaintiff[.]"). Plaintiffs allege that O'Reilly wrongfully recommended their termination, but attribute no statement to him. Am. Comp. ¶ 183. Plaintiffs' defamation claim against O'Reilly thus fails.

### D.    Violation of 42 U.S.C. § 1981

Plaintiffs allege in Count I that Defendants terminated them on the basis of their race. They further assert that FedEx's stated reason for terminating them—their supposed failure to

safeguard property on their delivery trucks—was pretextual as evidenced by FedEx's refusal to similarly discipline another employee, Glen Booker, who was responsible for, yet lost, the master key to the delivery trucks. Am. Compl. ¶¶ 114–22. According to Plaintiffs, O'Reilly's failure to investigate or terminate Booker while recommending Plaintiffs' termination amounts to "a classic 'double standard' treatment" and "race discrimination." *Id.* ¶ 119–21.

The court concludes that Count I, as pled by Plaintiffs in their proposed Amended Complaint, is duplicative of Count II, which the Defendants do not seek to dismiss. *See DTCC Data Repository LLC v. U.S. Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9, 18–19 (D.D.C. 2014) ("Claims are duplicative when they stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." (internal quotation marks omitted)). Though styled differently, Counts I and II are the same claim: intentional racial discrimination and disparate treatment in violation of 42 U.S.C. § 1981 arising from Plaintiffs' termination by Defendants. *Compare* Am. Compl. ¶¶ 114–22, *with* Am. Compl. ¶¶ 123–31. Accordingly, leave to amend Count I is denied and the court will dismiss Count I on the grounds that it duplicates Count II. *DTCC Data Repository LLC*, 25 F. Supp. 3d at 18 ("A court may dismiss duplicative claims in its discretion.").

### E. Negligence

In Count VII, Plaintiffs assert a claim of negligence against Defendants under the theory that Defendants breached their duty of care to Plaintiffs by failing to provide them with a secure delivery truck and that, as a direct and proximate result of this breach, Plaintiffs were terminated. Am. Compl. ¶¶ 164–72.[2] Defendants contend that Plaintiffs' negligence claim is barred by the

---

[2] Plaintiffs also assert that Defendants are liable pursuant to D.C. Code § 35-301, "Liability of common carriers for injuries to employees." *Id.* ¶ 172. At this juncture, pending Plaintiffs' presentation of their negligence claim to DOES for a determination of jurisdiction, the court will assume without deciding that FedEx is a "common carrier" under D.C. Code § 35-501.

District of Columbia Workers' Compensation Act ("WCA"), D.C. Code § 32-1501 to -1545, because the WCA "is the exclusive remedy for workplace-related injuries." FedEx's Mot., at 12–13; O'Reilly's Mot., at 15–16. The court concludes that a substantial question exists as to the applicability of the WCA to Plaintiffs' negligence claim and accordingly will stay the proceedings as to Count VII for 45 days to allow Plaintiffs to present their claim to the D.C. Department of Employment Services ("DOES").

The WCA covers, in pertinent part, an injury to an employee "that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury . . . , while in the District of Columbia." D.C. Code § 32-1501(a)(1). The WCA broadly defines "injury" to encompass "accidental injury or death arising out of and in the course of employment. . . ." *Id.* § 32-1501(12). For injuries that fall within this definition, the WCA is "the employee's exclusive remedy against the employer[.]" *Id.* § 32-1504(b). "[B]ecause the WCA contains a number of presumptions that favor coverage, the employee bears the burden of proving that the WCA does not apply." *Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 63 (D.D.C. 2009).

Plaintiffs insist that the WCA pertains solely to physical injury arising out of the course of employment, not the economic and emotional injuries they allege resulted from their terminations. Opp'n to FedEx's Mot, at 25. It is well-established, however, that "in appropriate circumstances, an emotional injury alone may be compensable under the [WCA]." *See Wright v. D.C. Dep't of Emp't Servs.*, 924 A.2d 284, 286 (D.C. 2007). Moreover, District of Columbia courts recognize the "economic focus of the [WCA]," noting "the longstanding principle that compensation under the [WCA] is tied to loss of wage-earning capacity, not the existence of a medical injury." *M.C. Dean, Inc. v. D.C. Dep't of Emp't Servs.*, 146 A.3d 67, 76 n.8 (D.C. 2016).

In light of this authority, the court finds that a "substantial question" exists as to whether Plaintiffs' negligence claim and the economic and emotional injuries upon which it is based are exclusively compensable though the WCA. In such circumstances, DOES, "the administrative agency charged with implementing the statute, given its special expertise, has primary jurisdiction to make the initial determination concerning coverage before the courts can exercise jurisdiction." *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 631 (D.C. 1995). As such, the D.C. Court of Appeals instructs that the appropriate course of action is to stay the proceeding until a plaintiff has had reasonable time to present his or her claims to DOES. *E.g.*, *Joyner v. Sibley Mem'l Hosp.*, 826 A.2d 362, 374–75 n.14 (D.C. 2003). This court will follow that procedure here and stay proceedings as to Count VII for 45 days to allow Plaintiffs to present their negligence claim to DOES, so that DOES can determine whether the WCA provides coverage for their claim. *See Lockhart v. Coastal Intern. Sec., Inc.*, 905 F. Supp. 2d 105, 115 n.8 (D.D.C. 2012).

IV.     **CONCLUSION**

For the foregoing reasons, (1) Defendant FedEx's Partial Motion to Dismiss is denied as moot; (2) Defendant O'Reilly's Partial Motion to Dismiss is denied as moot; and (3) Plaintiffs' Motion for Leave to Amend is granted in part and denied in part.

Accordingly, the Amended Complaint constitutes the operative pleading in this matter with respect to Count II as to both Defendants and Count VIII as to Defendant FedEx only. All other Counts contained in the Amended Complaint, except Count VII, fail to state a claim. Proceedings

as to Count VII are hereby stayed for 45 days, pending Plaintiffs' presentation of their negligence claim to DOES.

Dated:   November 22, 2017

Amit P. Mehta
United States District Judge