UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**ALFRED WENDELL HOWARD, JR.**              )
**and HIKIEM SHARODD CAIN,**                )
                                            )
    **Plaintiffs,**                         )
                                            )
    v.                                    )    Case No. 16-cv-02514 (APM)
                                            )
**FEDERAL EXPRESS CORPORATION**             )
**and JOHN O'REILLY,**                      )
                                            )
    **Defendants.**                        )
_____)

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

Alfred Howard Jr. and Hikiem Cain are African-American males who were employed as full-time couriers by Federal Express Corporation ("FedEx") prior to their terminations in December 2015 and June 2016, respectively. According to Defendants FedEx and John O'Reilly, their former supervisor, Plaintiffs were terminated for failing to follow internal policies regarding loss of packages while in transit. In December 2016, Plaintiffs filed a complaint against FedEx alleging, among other things, employment discrimination on the basis of race in violation of 42 U.S.C. § 1981 and defamation. Plaintiffs subsequently amended their complaint to name O'Reilly as a defendant. Following the court's ruling on Defendants' motions to dismiss Plaintiffs' complaint, Plaintiffs' remaining claims are employment discrimination under § 1981 as to both Defendants and defamation as to FedEx only.[1]

---

[1] Count VII, negligence, was stayed by the court pending proceedings before the D.C. Department of Employment Services and thus is not resolved in this Memorandum Opinion. *See* Mem. Op. and Order, ECF No. 29 [hereinafter Mem. Op.], at 10–12.

Before the court are Defendants' Motions for Summary Judgment as to these claims. For the reasons stated below, the court grants Defendants' Motions for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

#### 1. *Howard's Employment and Termination*

Alfred Howard was employed by FedEx as a courier from October 27, 1997, to December 23, 2015. Pls.' Errata, ECF No. 23, Ex. 1, ECF No. 23-1 [hereinafter Am. Compl.], ¶ 5. In September 2015, Howard was issued a warning letter by one of his managers, admonishing him for losing packages while on his route, failing to report a defective door on his truck, and improperly scanning packages. Defs.' Mot. for Summ. J. as to All Claims Filed by Howard, ECF No. 34 [hereinafter Defs.' Mot. as to Howard] Ex. B, ECF No. 34-4 [hereinafter Howard Depo.], at 51, 164–65.[2] The letter cited a violation of section 2-5 of the FedEx Employee Handbook, specifically the Acceptable Conduct Policy, which outlines various company policies regarding how employees are expected to conduct themselves at FedEx. *Id.* at 131–32, 164–65. The Acceptable Conduct Policy enumerates behavioral violations that may result in disciplinary action or termination for an employee, including "[c]ustodial loss of Company or customer property." *Id.* at 132. The warning letter further stated that "[a] repeat of this or any other behavioral problem may result in more severe disciplinary action up to and including termination." *Id.* at 164. Howard did not appeal or contest the warning letter when he received it. *Id.* at 53.

Less than three months later, on December 2, 2015, more packages went missing on Howard's route. *Id.* at 166–67. On this occasion, the packages contained three HP laptops totaling $1800. *Id.* at 166. Following an investigation, FedEx determined that Howard had violated section

---

[2] All page numbers for Howard Depo. are based upon the ECF pagination.

2

2-5 of the Acceptable Conduct Policy, and sent Howard a letter of termination. *Id.* at 166–67. The management rationale for Howard's termination stated that Howard was fired for "loss of custodial control of the three HP laptops valued at a total of $1800." *Id.* at 174. Howard appealed his termination through FedEx's internal appeals process—the Guaranteed Fair Treatment Procedure ("GFTP")—and his termination was upheld at all three steps of the GFTP process. *Id.* at 94. No one at FedEx ever explicitly accused Howard of stealing the packages. *Id.* at 58–59. Following Howard's termination, Hikiem Cain took over Howard's old route. *Id.* at 78–79.

### 2. *Cain's Employment and Termination*

Hikiem Cain was employed by FedEx as a courier from November 20, 2008, to June 24, 2016. Am. Compl. ¶ 6. During his employment, Cain was reprimanded for forgetting to scan packages after delivering them on four separate occasions: on December 15 and 22, 2015; March 8, 2016; and April 29, 2016. *See* Defs.' Mot. for Summ. J. as to All Claims Filed by Cain, ECF No. 35 [hereinafter Defs.' Mot. as to Cain], Ex. B, ECF No. 35-4 [hereinafter Cain Depo.], at 43–45, 49–53.[3] Cain was also reprimanded on January 11, 2016, for delivering five priority packages late and failing to report it to management. *Id.* at 46–48. Cain also had numerous infractions on his company record for failing to clock in or out and for break violations. *See id.* 176–93. At no point did Cain receive any warning letters or suspensions for these infractions. *Id.* at 46, 48, 50–51, 53. Cain was commended, however, on May 4, 2016, for completing 100% of his route goal in April. *Id.* at 166. On the next day, May 5, 2016, eight packages went missing while out for delivery on Cain's route, totaling $2490 in lost items. *Id.* at 216. Following an investigation, Cain was terminated on June 24, 2016. *Id.* at 216-217. Cain's termination letter cited the packages lost while in transit as a violation of section 2-5 of the Acceptable Conduct Policy. *Id.* Cain

---

[3] All page numbers for Cain Depo. are based on the ECF pagination.

3

appealed his termination through the GFTP process and his termination was upheld at each step. *Id.* at 69. The management rationale for Cain's termination stated that he was fired for "loss of custodial control" of "several high value customer shipments" of an estimated value of $2,490. *Id.* at 218.

### 3. John O'Reilly's Behavior

John O'Reilly was Plaintiffs' immediate supervisor at the times of their terminations. Am. Compl. ¶ 9. O'Reilly ultimately made the decision to fire both Plaintiffs. Howard Depo. at 59; Cain Depo. at 216–17. FedEx promoted O'Reilly to his current supervisory position on November 15, 2015, just one month before Howard's termination. Defs.' Mot. as to Howard, Ex. D, ECF No. 34-6 [hereinafter O'Reilly Depo.], at 5–6.[4]

Both Plaintiffs claim that O'Reilly did not like them because of their race and that O'Reilly was motivated by racial animus when he made the decision to fire them. *See* Am. Compl. ¶¶ 9, 20; Howard Depo. at 79, 83; Cain Depo. at 82–83. Howard's contention that O'Reilly did not like him is not based on any specific instance but instead because O'Reilly was "short" with Howard and "didn't believe what [Howard] would say." Howard Depo. at 79. Howard also recounts that O'Reilly once bragged to Howard that a song reminded O'Reilly of beating up Jewish boys as a child, saying "yea man[,] we used to beat those little Jewish boys back home and pull them by their burns." *Id.* at 25; *see* Am. Compl. ¶ 17.

Cain provided additional examples of O'Reilly's attitude towards Plaintiffs. On one occasion, Cain was at a conveyor belt loading packages onto his truck when he stopped the conveyor belt to offload the packages, which seemed to upset O'Reilly. Cain Depo. at 79. O'Reilly told Cain "[s]top fucking—don't fucking do that shit again." *Id.* Cain asked O'Reilly

---

[4] All page numbers for O'Reilly Depo. are based upon the ECF pagination.

4

not to speak to him that way again and to treat him with respect. *Id.* at 79. On another occasion, O'Reilly was upset about receiving bad reviews from his couriers and told them, in a meeting, "[y]'all not going to fuck me in my ass like that. I'm not going to have that." *Id.* at 82. Aside from those examples, Plaintiffs do not recall any other derogatory remarks made by O'Reilly that they assert exhibit racial animus. *Id.* at 84–85; Howard Depo. at 25.

Three other FedEx couriers—Randy Baldwin, Glennis Cole, and James Snyder—were not fired by O'Reilly despite losing custodial control of packages. *See* Howard Depo. at 67, 70, 72–73. Baldwin, Cole, and Snyder are all African-American. *Id.* at 66, 68–69.

### 4. *Alleged Defamatory Incidents*

Following Plaintiffs' terminations, O'Reilly announced Plaintiffs' terminations to their former coworkers. Am. Compl. ¶¶ 179–80. Neither Plaintiff was present at the announcement of his own termination, but Cain was present when O'Reilly announced Howard's termination. Cain Depo. at 93; Defs.' Mot. as to Howard, Ex. C, ECF No. 34-5 at 13–14. At the meeting announcing Howard's termination, O'Reilly never told the work group why Howard was fired, though Howard states that another courier, Terry Nolan, told Howard that O'Reilly used "some explicits (sic)" when announcing Howard's termination. Howard Depo. at 97–98. Specifically, O'Reilly said "F-U-C-K" three times. *Id.* at 98.

Howard's termination was further discussed in a conversation between the security guard who led the investigation into Howard's missing packages, Marcus Lyers, and Howard's former coworker, Nolan. Howard Depo. at 100–01. Lyers and Nolan were discussing the investigation into Howard when Lyers told Nolan "[f]orget about Al. You don't know the whole truth about Al." *Id.* at 101. Nolan responded, "I've known him for 20 years. He's not like that." *Id.* Howard,

5

however, was not present for the conversation; he only related what he had heard from Nolan. *Id.* at 100. Neither Lyers nor Nolan provided any direct evidence of this conversation.

B. **Procedural Background**

Plaintiffs filed their complaint against FedEx on December 23, 2016, alleging eight claims: (1) racial discrimination in the making and enforcement of contracts in violation of 42 U.S.C. § 1981 (Count I); (2) racial discrimination in violation of 42 U.S.C. § 1981 (Count II); (3) promissory estoppel based on an implied policy of giving employees three warnings within a 12-month period prior to deciding to terminate their employment (Count III); (4) breach of duty of good faith and fair dealing (Count IV); (5) breach of express contract (Count V); (6) breach of implied contract based on the policies rooted in FedEx's People Manual, the FedEx Handbook, and the GFTP process (Count VI); (7) negligence (Count VII); and (8) defamation by innuendo (Count VIII). Compl., ECF No. 1, ¶¶ 100–49. Defendant FedEx moved to dismiss Counts I, III, IV, V, VI, and VII pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Def. FedEx's Mot. to Dismiss, ECF No. 7. After FedEx's motion ripened, O'Reilly likewise moved to dismiss Counts I, III, IV, V, VI, and VII, and additionally moved to dismiss Count VIII pursuant to Rule 12(b)(6). Def. O'Reilly's Mot. to Dismiss, ECF No. 19. Plaintiffs then moved for leave to file an amended complaint, seeking to allege additional facts about O'Reilly's conduct. Pls.' Mot. to Am. Compl., ECF No. 22.

Evaluating Defendants' arguments for dismissal against the claims and allegations presented in proposed Amended Complaint, the court permitted Plaintiffs to amend their complaint, but dismissed Counts I, III, IV, V, and VI for failure to state a claim. *See generally* Mem. Op. The court stayed proceedings as to Count VII, the negligence claim. *Id.* at 11. Finally, the court dismissed Count VIII—the defamation claim—as to O'Reilly only because Plaintiffs did

not attribute any defamatory statements to O'Reilly. *Id.* at 9. Accordingly, what remains of Plaintiffs' action is their race discrimination claim against both Defendants under 42 U.S.C. § 1981 (Count II) and their defamation claim against FedEx only (Count VIII). *Id.* at 12.

Defendants filed two Motions for Summary Judgment: one as to all claims filed by Howard and one as to all claims filed by Cain. *See* Defs.' Mot. as to Howard; Defs.' Mot. as to Cain. Plaintiffs responded to Defendants' Motions in a consolidated opposition. *See* Pls.' Opp'n to Defs.' Mots., ECF No. 39 [hereinafter Pls.' Opp'n].

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, as the moving party, have the "burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because credibility determinations and the weighing of evidence are functions for the jury and not the judge, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "The inferences must be reasonable, however, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).

"A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006) (internal quotation marks omitted). The inquiry of the court, therefore, is not to

7

determine which side has the better case, but to determine if there is "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the evidence, even taking all inferences in the light most favorable to the non-movant, is "so one-sided" that no jury could reasonably find for the non-movant, then summary judgment should be granted. *Id.* Accordingly, the burden on Defendants in the instant case is to show the court "that there is an absence of evidence to support [Plaintiffs'] case." *Celotex Corp.*, 477 U.S. at 325. In addition, the evidence relied upon by the non-movant to support their case must be admissible to be taken into account for the purposes of summary judgment. *See Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).

## IV. DISCUSSION

Defendants move for summary judgment as to Howard's claims based upon a time-barring provision within Howard's employment contract that prohibits him from bringing suit against FedEx after a six-month limitations period has run. Additionally, Defendants argue, as to both Plaintiffs, that there is no genuine dispute as to any material fact to support their claims.

Because the court holds that the record evidence does not support Plaintiffs' employment discrimination and defamation claims as a matter of law, the court does not address the validity of the contract or its time-barring clause.

### A. Plaintiffs' Section 1981 Claims

"The burdens of persuasion and production for claims raised under § 1981 . . . are identical to those for claims alleging discriminatory treatment in violation of Title VII." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997). Because Plaintiffs' claims are based upon circumstantial evidence, the court follows the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework follows three steps: first, the

court determines if the employee can establish a prima facie case of employment discrimination; if she can, the burden shifts to the employer to put forth a legitimate, nondiscriminatory reason for firing the employee; finally, if the employer does put forth a legitimate reason for the employee's termination, the employee must offer evidence to show that that reason offered by the employer is a pretext for discrimination. *Id.* at 802–04. The burden on the employer to proffer a legitimate reason is "one of production," which may be met by "offering admissible evidence sufficient for the trier of fact to conclude" that the employee was fired for a legitimate, nondiscriminatory reason. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). When an employer asserts a legitimate reason for firing an employee, "as an employer almost always will do by the summary judgment stage of an employment discrimination suit," the prima facie case becomes an "unnecessary sideshow," leaving the court with one central inquiry: "[W]hether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). "At this stage, if [the plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [the defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered" for the defendant. *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27–28 (D.C. Cir. 1997).

Defendants in this case have proffered a legitimate, nondiscriminatory reason for firing Plaintiffs, namely, their violation of the Acceptable Conduct Policy relating to "[c]ustiodial loss of Company or customer property." Howard Depo. at 132, 166; Cain Depo. at 216. In Howard's case, $1800 worth of packages were lost. Howard Depo. at 166. In Cain's case, $2490 worth of packages were lost. Cain Depo. at 216. Both Plaintiffs were issued termination letters stating

9

these reasons and both had their terminations upheld through each step of the GFTP process. Howard Depo. at 94, 166; Cain Depo. at 69, 216. In Howard's case, he was issued a warning letter for a prior incident where he had a similar infraction. Howard Depo. at 164. And, in Cain's case, he had a history of disciplinary infractions at FedEx before the incident where he lost the packages. *See* Cain Depo. at 43–53. Given that "[t]he most common legitimate reason on which an employer might rely in disciplining an employee would be that the employee had violated an employment regulation or policy," Defendants have offered a legitimate, nondiscriminatory reason for firing Plaintiffs. *Williams v. Chertoff*, 495 F. Supp. 2d 17, 35 (D.D.C. 2007). Accordingly, to "survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).

Plaintiffs offer three reasons why Defendants' explanation is pretext: (1) Defendants' justification for firing Plaintiffs—their "loss of custodial control"—is too vague to be legitimate; (2) other FedEx couriers were not fired despite losing packages while on their routes; and (3) O'Reilly's conduct and attitude towards Plaintiffs demonstrates racial animus. *See* Pls.' Opp'n, Mem. in Supp., ECF No. 39-1 [hereinafter Pls.' Mem.], at 8–30. None of these reasons, alone or taken together, warrant sending this case to a jury.

Plaintiffs' first argument does not support an argument of pretext. "Custodial loss of . . . customer property" is clearly stated as one of the violations listed in FedEx's Acceptable Conduct Policy and it plainly means that a courier cannot lose packages while under his control. *See* Howard Depo. at 132. Neither Plaintiff disputes having received the Acceptable Conduct Policy. Howard Depo. at 13–16; Cain Depo. at 25. And neither Plaintiff claims any confusion

10

about the meaning of the prohibition against "custodial loss of . . . customer property." Cain Depo. at 26. That comes as no surprise. After all, a delivery company like Federal Express cannot effectively function if its couriers lose customers' packages with impunity. Accordingly, Plaintiffs' first proffered reason does not establish pretext.

Next, Plaintiffs' comparator evidence provides no help. Plaintiffs point to three other couriers—Randy Baldwin, Glennis Cole, and James Snyder—who lost packages while on their routes, but who were not fired, as evidence that Plaintiffs were treated differently because of their race. *See* Pls.' Mem. at 22–23; Howard Depo. at 67, 70. Plaintiffs, however, fundamentally misunderstand how comparator evidence works. A plaintiff may prove that an employer had a discriminatory motive by producing "evidence suggesting that the employer treated other employees of a *different* race ... more favorably in the same factual circumstances." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008) (emphasis added). Here, Baldwin, Cole, and Snyder are all of the *same* race; they are African-American, just as Plaintiffs are. Howard Depo. at 67, 70. Accordingly, none of them are comparators who received differential treatment to support a claim of race discrimination. Therefore, Plaintiffs' second proffered reason does not show pretext.

Finally, O'Reilly's vulgar statements and profanity do not supply sufficient evidence of pretext. "'[M]any bosses are harsh, unjust, and rude,'" but "Title VII only protects against invidious discrimination." *Winston v. Clough*, 174 F. Supp. 3d 224, 237 (D.D.C. 2013) (citation omitted). O'Reilly's language may have been crude, but it is not sufficient to show racial animus. Moreover, O'Reilly's anti-Semitic comment might support a claim of religious discrimination, but it does not support Plaintiffs' claims of discrimination based on race. O'Reilly was not an ideal supervisor, but that alone cannot support an inference of pretext.

For the above reasons, no reasonable jury could find that Defendants' reasons for firing Plaintiffs were pretext for race discrimination. Therefore, this court grants Defendants' Motions for Summary Judgment as to Plaintiffs' Section 1981 claims.

### B. Defamation

To prove defamation under District of Columbia law, a plaintiff must show "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533–34 (D.C. Cir. 2013). "A statement is defamatory if it tends to injure the plaintiff in his trade, profession or community standing, or to lower him in the estimation of the community." *Id.* at 534. A statement need not be completely untrue to be defamatory; instead, a statement may be defamatory due to some "implied meaning" that comes with a true statement. *White v. Fraternal Order of Police ("White I")*, 707 F. Supp. 579, 589 (D.D.C. 1989). It is not enough, however, that the statement be capable of being understood as having the implied meaning. A plaintiff must present "affirmative evidence suggesting that the defendant intends or endorses the defamatory inference" through "the particular manner or language in which the true facts are conveyed." *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990).

Both Plaintiffs claim they were defamed by innuendo when O'Reilly announced their terminations to their coworkers. In Plaintiffs' view, by publicly announcing their firings FedEx insinuated that Plaintiffs had stolen the lost packages or were somehow responsible for the lost packages. Am. Compl. ¶¶ 179–80. Plaintiffs' theory of defamation is fatally flawed. Although the District of Columbia recognizes a cause of action for defamation by implication, "[c]ourts in the District refuse, as a matter of law, to find defamatory meaning where the claim of defamation

12

is based on the interpretation third parties place upon the termination of an at-will employee." *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 52 (D.D.C. 2012) (citing *Clampitt v. American Univ.*, 957 A.2d 23, 40 (D.C. 2008)). This is because "terminations of at-will employees can occur for any reason, or for no reason at all," rendering "any message conveyed by a termination standing alone" too ambiguous to sustain a claim of defamation. *Clampitt*, 957 A.2d at 40 (internal citations and quotation marks omitted). The court already established that Plaintiffs were at-will employees. *See* Mem. Op. at 4–7. Therefore, the mere announcement of their firing cannot support a claim of defamation by innuendo.

Howard's separate defamation claim fares no better. Howard alleges that Lyers defamed him when he told Nolan "[f]orget about Al. You don't know the whole truth about Al," when discussing Howard's termination. Am. Compl. ¶ 57. The problem with this claim is that there is no admissible evidence to support it. To survive a motion for summary judgment, a plaintiff must rely on evidence that is "capable of being converted into admissible evidence." *Gleklen*, 199 F.3d at 1369. In *Gleklen*, the D.C. Circuit disregarded the plaintiff's evidence of a conversation for the purposes of summary judgment because the only mention of it on the record was from the plaintiff relaying what she had been told about the conversation from someone who was present for the conversation. *Id.* In this case, the only evidence of the conversation between Lyers and Nolan on the record comes from Howard himself, who testified to what Nolan relayed to him about the conversation with Lyers. Howard Depo. at 100. Neither Lyers nor Nolan were deposed. Just as the conversation in *Gleklen* was disregarded for its lack of admissibility, so too is Howard's testimony. *See Gleklen*, 199 F.3d at 1369. Because Howard has not offered any admissible alleged defamatory statement by Lyers, his separate defamation claim fails.[5] *See Farah,* 736 F.3d at 533.

---

[5] Even if Lyers' statement were admissible, it would still not be defamatory as a matter of law because it is too vague to carry any defamatory meaning. It is not enough that one can possibly draw a defamatory inference from the

Accordingly, the court grants FedEx's Motion for Summary Judgment with respect to Plaintiffs' defamation claims.

## V. CONCLUSION

For the foregoing reasons, this court holds that a reasonable jury, drawing all inferences in the light most favorable to Plaintiffs, could not find for them. Accordingly, the court grants Defendants' Motions for Summary Judgment.

Because Plaintiffs' negligence claim remains stayed, *see* n. 1 *supra,* the court does not yet enter a final order in this matter. The court, however, may request that the parties submit briefing on the negligence claim depending on Plaintiffs' next status report.

Dated: June 25, 2018

Amit P. Mehta
United States District Judge

---

statement; instead, "the recipient must be able to reasonably understand the statement to convey the defamatory meaning" for the statement to be defamatory. *White I*, 707 F. Supp. at 589. Here, even Howard admits that he did not know what Lyers' statement meant. Howard Depo. at 103. If Howard himself does not understand Lyers' statement to be defamatory, neither could a reasonable juror.